# J. C. WHITAKER v. PHŒNIXVILLE BOR.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS
OF CHESTER COUNTY.

Argued February 10, 1891—Decided April 6, 1891.

1. Damages to a lot owner from the opening of a borough street, assessed under § 1, act of April 22, 1856, P. L. 525, are to be ascertained as of the time of the opening, and not as of the time the street was established by the ordinance: Easton Bor. v. Rinek, 116 Pa. 1; Volkmar St., 124 Pa. 320;—Philadelphia v. Dickson, 38 Pa. 247, distinguished.
(*a*) Adjoining borough lots, say A, B and C, were owned by the same person at the time when an ordinance was enacted establishing a new street occupying the whole of lot A. Afterward the owner sold lot B, retaining lot C, and at a still later date proceedings were begun for the opening of the street and the assessment of damages:
2. In such case, the owner was entitled to the value of lot A, occupied wholly by the street, undiminished by benefits or advantages to lots B and C, if any existed; and this, notwithstanding the fact that, in the sale of lot B, an increased price was received on account of the prior establishment of the street by the ordinance.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and WILLIAMS, JJ.

No. 58 January Term 1891, Sup. Ct.; court below, No. 60 January Term 1890, C. P.

On August 12, 1889, the borough of Phœnixville presented its petition to the Court of Quarter Sessions for the appointment of viewers to assess damages for the opening of Fourth Avenue, under the act of April 22, 1856, P. L. 525. The viewers filed their report on October 28, 1889, and on November 25th, Joseph C. Whitaker appealed therefrom to the Court of Common Pleas, under the act of June 13, 1874, P. L. 283. Thereupon, an issue was directed wherein the said Whitaker was plaintiff and the said borough defendant.

At the trial, on February 25, 1890, it was shown that on June 7, 1887, an ordinance was enacted by the burgess and council establishing Fourth Avenue from Starr street to Nutts Avenue, crossing Main street between them; that at this time

Charge of Court below.

Joseph C. Whitaker, the plaintiff, was the owner of three lots of ground fronting on Main street, each 50 feet in front by 175 feet in depth, and numbered respectively 23, 24, 25, 26; that the street, as established by the ordinance, occupied the whole of lot 23 and ten feet of lot 24; that the plaintiff then divided his remaining property into three lots, each having a frontage of 46 ⅔ feet, and on July 14, 1888, conveyed two of them to Minnie Caswell, one of those conveyed being described as follows: " Lot No. 1: Beginning at a corner, at the intersection of Main street and Fourth Avenue and thirty feet distant from the centre line of said street, thence along the south side of Fourth Avenue thirty feet distant from the centre line of the same, south eighty-two degrees west, one hundred and seventy-five feet to a corner," etc.; and that, thus, at the date when the petition for the appointment of viewers was presented, the plaintiff owned no ground abutting on said Fourth Avenue, and, of his original holding, only a part of lot 26, separated from Fourth Avenue by the property conveyed to Minnie Caswell.

The plaintiff, called as a witness, was asked: " Q. In selling your lot to Mr. Caswell, you sold it as a corner lot? A. Well, it was an ordained street; I could not get out of it. . . . . Q. But, as a fact, you did represent and sell it as a corner lot? A. I do not know that I represented it as anything. It was a corner lot, he knew that; he knew the street was ordained." Mr. Caswell, who negotiated the purchase of the lot for his daughter, testified: " Q. Did he make any difference in any of this 47 feet? A. $200 more for the corner lot. Q. You paid $1,400 for the 47 feet on the corner, and $1,200 for the other? A. Yes, sir."

At the close of the testimony, including that upon the subject of damages, the court, WADDELL, P. J., charged the jury in part as follows:

Now, you will bear in mind that it is your duty, in estimating these damages, to take into consideration the advantages as well as the disadvantages sustained by Mr. Whitaker, and thus, if possible, ascertain whether there is any balance on the one side or the other. If the advantages should exceed the disadvantages, I do not understand that you are called upon to com-

Charge of Court below.

pute them; but if the disadvantages exceed the advantages, then you must compute the disadvantages, and thus ascertain what is due and payable to Mr. Whitaker on this account.

[At the time this street was thus ordained and dedicated by the borough to public use, Mr. Whitaker was the owner of 200 feet of ground fronting on Main street. Fourth Avenue intersects Main street, and as I understand it, passes along the southern line of these 200 feet. The 140 feet left after this street had been dedicated, which street was 60 feet wide, belonging to the Whitaker estate, all lay south of this avenue. This was the condition of things when the borough dedicated this street to the use of the public; and, in the opinion of the court, you will consider the condition, or you will consider Mr. Whitaker's rights as of that time. It is intimated here that he is entitled to be paid for the ground occupied by this street, inasmuch as he owns no other ground appurtenant to the street. It is undoubtedly a principle of law that where a gentleman is the owner of a lot of ground in a town like Phœnixville, say 60 feet in width facing on a principal street, and, by reason of the opening of a cross street, the borough thinks it its duty to the public to take that whole lot thus belonging to the gentleman, as you will see his lot is blotted out; there are no advantages to be computed, he has nothing left; they have dedicated to the public all the ground that he owned, and he is entitled to be paid for that ground just what it is worth. You will see that there cannot be any advantages estimated in such a case. But, in the opinion of the court, that is not the principle applicable to this case. At the time this street was dedicated to the public, Mr. Whitaker was the owner of 200 feet of land adjoining and appurtenant to the street thus laid out by the borough; and you are to take into consideration whether or not this street, thus dedicated to the public, has been of any advantage to him so far as the 200 feet are concerned, or, in other words, so far as the remaining 140 feet may be concerned. In the opinion of the court, that is the principle applicable to this case, and you will apply the evidence which has been furnished you to that principle.] [3] . . . . .

The plaintiff has asked me to consider some points which have been reduced to writing:

1. In assessing the damages, the jury can only have regard

Charge of Court below.

to the advantages and disadvantages caused to the several parties along the line of and adjoining Fourth Avenue. The advantages accruing to the lot owned by the plaintiff, situated on Main Street and separated from said Fourth Avenue by 93 feet, cannot be taken into consideration; regard is only to be had to the tract of land through which Fourth Avenue runs, and not to the person of the owner.

Answer: That would be true and correct, if, in the estimation of the court it was applicable to this case; that is, you could only take into consideration and assess the damages for properties abutting on Fourth Avenue. But, as you see, in the estimation of the court we regard Mr. Whitaker's property as all abutting on Fourth Avenue, the 140 feet, and not exclusive of the balance, I think it is some 47 feet, that is left. I would affirm the point on general principles, but I do not think it is applicable to this case.[1]

2. The advantages to be considered are such only as are special to the property itself, and not to the person of the owner. The general appreciation of property in the neighborhood, consequent upon the opening of Fourth Avenue, cannot enter into the calculation. This the plaintiff, whose land is taken, is as fairly entitled to as his neighbor whose possession and enjoyment has not been disturbed.

Answer: This is affirmed.

3. As, therefore, the plaintiff owns no property along the line of or adjoining Fourth Avenue, except the property absolutely and wholly taken by the opening of said Fourth Avenue, there are no advantages to be considered by the jury, and the verdict must be for the plaintiff for the value of the land so wholly taken.

Answer: You will see from what I have already said that I cannot affirm that point, and must therefore disaffirm it. I have endeavored to explain to you what in the opinion of the court are the principles applicable to it. I have said to you, in our estimation you are to consider Mr. Whitaker as owning the 140 feet which he owned at the time this street was dedicated to the borough.[2]

Counsel are fearful that the jury might have misunderstood what the court meant. What I meant to say was, if the jury should conclude that Mr. Whitaker could have realized out of

Opinion of the Court.

the 140 feet after the street was thus dedicated to public use, as much as he could have realized out of the 200 feet before it was dedicated, then you will see there is no disadvantage to him, there is no loss.

—The jury returned a verdict for the plaintiff for $350. A rule for a new trial having been discharged and judgment entered, the plaintiff took this appeal, assigning for error:

1, 2. The answers to the plaintiff's points. [1] [2]

3. The portion of the charge embraced in [ ] [3]

*Mr. W. R. Murray*, for the appellant.

Counsel cited: (1) Schuylkill Nav. Co. v. Thoburn, 7 S. & R. 411; Long v. Railroad Co., 126 Pa. 146; Harrisburg etc. R. Co. v. Moore, 4 W. N. 532. (2) Keller St., 25 W. N. 524; Dillon on Mun. Corp., § 473; Canal St., 11 Wend. 154; Anthony St., 20 Wend. 618; Graeff v. Baltimore, 10 Md. 544; Wagoner v. Dismant, 2 Chest. Co. R. 371. (3) Easton Bor. v. Walters, 18 W. N. 117; Pittsburgh City, 2 W. & S. 320; Easton Bor. v. Rinck, 116 Pa. 7; North Chester Bor. v. Eckfeldt, 1 Mona. 732; Volkmar St., 124 Pa. 327; Fifth and Sixth Sts., 4 W. N. 443.

*Mr. H. H. Gilkyson*, for the appellee.

Counsel cited: Dillon on Mun. Corp., 3d ed., § 614; Shaw v. Charlestown, 3 Allen 538; Philadelphia v. Dickson, 38 Pa. 247; Fifth and Sixth Sts., 4 W. N. 443.

OPINION, MR. JUSTICE GREEN:

The ordinance ordaining Fourth Avenue was passed in June, 1887. The petition of the borough, to have damages assessed for opening Fourth Avenue, was presented in August, 1889. In the meantime, in July, 1888, Mr. Whitaker, the plaintiff, sold to Miss Caswell two lots, measuring together on Main street ninety-three feet, and extending along Fourth Avenue the whole depth of the lot. At the time, therefore, the proceedings to open were commenced, the plaintiff owned only the ground which was actually covered by the street, along the line of the street.* He had no land left which abutted on the street. There is no doubt that where a person owns all the

---

* See Main St., Big Run Bor., 137 Pa. 590.—REP.

ground which the street takes, he is entitled to the full value of the land taken; and there is no question of advantages and disadvantages to be considered. The only question that is raised on the present record is, at what time is the assessment to be made? If at the time of the ordaining of the street, the case was properly tried in the court below, and the judgment should be affirmed; but if at the time of the opening or of the commencement of the proceedings to open, the case was wrongly tried, and the judgment should be reversed.

We did decide in Philadelphia v. Dickson, 38 Pa. 247, that the owner had a right to have his damages assessed as soon as the street was established, whether it was opened or not; but that was because the act of 1855 expressly gave that right to the owner. The act of 1856, under which the present proceedings are instituted, contains no such provision, and hence that case is no authority for this. But in Volkmar St., 124 Pa. 320, we decided that the right of action to have damages assessed to the owner did not commence until the opening of the street or the doing of some unequivocal act by the city which indicated that the possession of the owner was about to be disturbed. And in Easton Bor. v. Rinek, 116 Pa. 7, we held that no damages were sustained until the street was opened.

It was thought by the court below that the plaintiff, by his sale to Miss Caswell, had already reaped the advantages of the ordaining, and practically of the opening of the street, and testimony was certainly given tending to prove that fact. But does that circumstance change the rule of law as to the time at which the damages are ascertained? We think not. The rule remains the same, and if the owner has obtained an advantage by the delay of the borough in opening the street, we see no reason why he should be deprived of the benefit of the rule on that account. It is simply an advantage which he has acquired by force of the circumstances. At the time of the proceedings to open, he did, in fact, own only the land taken for the street, and that land was not a part of any other and larger tract owned by him. It is difficult to understand upon what principle we can go back to an anterior time when he held other land in connection with this, in order to deprive him of the value of the land now taken. If we can go back one year for that purpose, there is no reason why we cannot do so

Opinion of the Court.

for five, ten, or twenty years. Yet to do this would seem strangely unreasonable, when we consider all the changes of title and improvements which may have taken place on the intervening land in the meantime.

It is a very common occurrence in the boroughs and smaller towns of the interior of the state, that streets are plotted upon duly authorized maps and formally adopted by the authorities, upon adjacent farm lands lying within the municipal limits, many years before they are opened. The damages for opening these streets cannot be asessed until the land covered by the streets is actually taken. If an owner still continues to own adjoining land, he, of course, must submit to the application of the doctrine that his damages for the part taken must be estimated with reference to the effect of the opening of the street upon the value of his entire holding. But if he has, in perfect good faith, years before the opening, sold off all his land except that which is taken for the street, why shall he not have the value of the land taken as the measure of his damage? We see no reason why. The time of the opening is the legal time for assessing the damage to the owner. At that time he has no land but the land taken, and he is entitled to its value. Rules of law do not shift and vary according to changing circumstances. When an owner who has no land but that which is taken, invokes the law as it is, with reference to all other citizens, he cannot be told that at some more or less remote time he owned other contiguous land, and therefore he cannot have the protection of the law as other citizens can. There cannot be two different and conflicting rules applicable to the same state of facts. We are of opinion that the allowance for advantages, on the ground that the land taken is part of a larger tract belonging to a common owner of the whole, cannot be made against the plaintiff, because he is not such an owner at the time his land is taken.

It is possible, however, that the value of the land taken by the street may be affected to some extent by the fact that the plaintiff had sold off the adjoining land to another as a corner lot adjoining Fourth Avenue, and thereby gave the right of frontage on the avenue to his grantee, and deprived himself of all right to interfere in any manner with the frontage line of the lot sold. If this difference in the character of his ownership, after the con-

veyance of the lot, affected the value of the remaining ground covered by the street, the plaintiff could only recover the value of that land as affected by the conveyance of the adjoining ground. The question whether the value of the ground was thus affected, and to what extent, should be left to the jury, with instructions that it is only the value of the land, subject to the right of the grantee of the adjoining lot to have a clear front on the avenue, that should be allowed as damages.

The assignments of error are all sustained.

Judgment reversed, and new venire awarded.

