82 So.2d 513 (1955)
Robert B. MAYER and Richard B. Mayer, Appellants,
v.
DADE COUNTY, a subdivision of the State of Florida, Appellee.
Supreme Court of Florida. Division B.
September 21, 1955.
Rehearing Denied October 10, 1955.
*515 Anderson & Nadeau, Miami, for appellants.
Hudson & Cason and Lilburn R. Railey, Miami, for appellee.
THORNAL, Justice.
This appeal presents a decree of the Circuit Court of Dade County in a proceeding in which appellants as plaintiffs attacked as arbitrary, unreasonable and confiscatory county zoning and set-back regulations which had the effect of precluding the appellants from using their property for construction of a hospital.
Appellants purchased the land involved in 1952. The applicable basic zoning regulations were adopted originally on August 2, 1938, and amended on May 9, 1950. Admittedly they were in effect when the property was acquired and plaintiffs below, appellants here, were aware of this fact at the time of purchase.
When applying for a building permit to construct a hospital appellants were confronted with the restrictive zoning and set-back regulations. They appealed to the Board of Adjustment for a variance from the letter of the regulations and were again rejected. Finally, they appealed to the Board of County Commissioners with the same result. Hence, the complaint in this cause asking that the County Zoning Ordinance, as applied to plaintiffs' property, be declared arbitrary, unreasonable and confiscatory, and that issuance to plaintiffs of a building permit for a hospital be directed. The Chancellor denied the relief prayed for.
In order to present a picture of the problem we have prepared a sketch of the boundaries of the property involved showing the applicable zones as follows:

*516 The area shaded by diagonal lines is the property for which appellants seek a permit to construct a hospital.
The building permit was denied and the appeal for a variance was not granted because of the following zoning and set-back regulations, to wit:
(a) Failure to meet frontage requirements. Under Zoning Resolution No. 3711, Section 12A it is required that to construct a hospital there must be a minimum lot width of 100 feet and a zoning classification of at least RU-4 (four family residences, hotels, motels, housing projects, lodges, libraries and the like). The same would apply to the BU-2A zone for the same type of building use and also to such buildings as hotels, sanitariums and apartment houses.
(b) Failure to meet zone requirements. The West 183 feet of appellants' property is zoned RU-2 which is a residence classification that excludes hospitals although the East 100 feet is in a BU-2A zone that allows hospitals.
(c) Failure to meet set-back and open-space requirements. No hospital could be built within 100 feet of any RU-2 zone, nor within 50 feet of any property under a different ownership. This would restrict hospital construction from the North and West sides of appellants' property, but if appellants' West 183 feet were rezoned RU-4 or BU-2A, the 100-foot restriction would have no effect on the application. Also Zoning Resolution No. 5147, adopted July 8, 1952, requires a 25-foot set-back from the East property line, and a 25-foot set-back from a side-line abutting a street. It is alleged that the County contends that the centerline of NW 106th Street, abutting appellants' property on the South, was actually the South line of appellants' property, thus resulting in a 40-foot set-back from the South line. It was stated that at some future date the County would widen NW 106th Street and would, therefore, need the South 15 feet of the property, and the 40-foot set-back was required as to this particular land so that when the street is widened the building would be at least 25 feet inside the property line.
It is further required that if the North wall of the hospital is solid, without an opening, it would have to set back 15 feet from the North line, otherwise 25 feet.
After a thorough and enlightening pre-trial conference, testimony was heard by the Chancellor with the result above stated.
The testimony reveals that the property was classified for zoning purposes only after a comprehensive zoning survey of the entire rural area of the county in 1938. There is no evidence that appellants were singled out for special or discriminatory treatment. However, the set-back requirement on NW 106th Street, as construed by appellees, justifies particular comment as we shall see later.
There was a conflict as to whether, in the opinion of experts, the entire property was zoned to its highest and best use. All conceded that NW 7th Avenue is a busy, commercial thoroughfare. There was also a conflict of opinion as to whether the particular property was adaptable for use as a hospital site, although there is testimony by witnesses for both sides that the entire plot should be zoned for "business" such as a grocery store, as distinguished from a hospital. The set-back and open-space requirements would preclude a hospital regardless of the nature of the zoning classification whether it be RU-4 or BU-2A.
While the basic zoning regulation to which the appellants object was in force and effect long before they acquired the property involved, this fact would not serve to preclude the appellants from challenging the validity of the regulation, if it actually was invalid, insofar as it was applicable to their property. Even though the property owner knew of the restrictions of the regulation when he purchased the land, he could still attack its validity although in appealing to the Board of Adjustment for a variance on a hardship basis, the Board would be justified in taking into consideration the fact of knowledge by the *517 property owner at the time he acquired the land. See City of Miami Beach v. Ocean & Inland Co., 146 Fla. 145, 200 So. 402; Id., 147 Fla. 480, 3 So.2d 364.
In ruling on certain proffered testimony of expert witnesses as to the reasonableness of set-backs the Chancellor decided that the decision as to whether the various set-back requirements were reasonable was for the Court to make as a matter of law after hearing the evidence on the nature of the requirements and their effect on the particular property. We find no error in this ruling.
In Forde v. City of Miami Beach, 146 Fla. 676, 1 So.2d 642, 645, we held that "In each case where an attack is made upon the validity of a zoning ordinance, insofar as its provisions apply to limit and restrict the litigants' property, as in the case at bar, a mixed question of law and fact is presented."
The Chancellor heard all of the testimony with reference to the nature of the property involved, its size, its location, a description of the surrounding community and the uses other than as a hospital to which the property might be put. After the presentation of all the evidence of this nature, the decision as to whether the restrictions were reasonable or unreasonable was a conclusion of law to be determined by the Court from the facts presented.
The record shows that despite the fact that under applicable regulations it would not be possible for the appellants to have constructed the proposed hospital upon the land in question, nevertheless, there were many other profitable uses to which the land could be put. Unlike Ocean Villa Apartments, Inc., v. City of Fort Lauderdale, Fla., 1954, 70 So.2d 901, the property owners in the case at bar were not precluded from the only use to which their property was adapted. There were many other uses permitted by the applicable regulations and the appellants were, therefore, not completely deprived of the beneficial use of their property. See also City of Miami Beach v. Silver, Fla., 1953, 67 So.2d 646.
Appellants attacked the constitutionality of Chapter 17833, Laws of Florida 1937, on the basic proposition that this act constitutes an unlawful delegation of legislative authority to the Board of County Commissioners of Dade County. Chapter 17833, supra, is applicable to "any county having a population of not less than 180,000 according to the last preceding state census * * *" and in effect it prescribes the procedure and lays down standards for the zoning of non-municipal property in the counties involved. We do not find the act to be offensive to the organic law. It is not a local act as contended by appellants for the reason that it applies to all counties with a population in excess of 180,000 "according to the last preceding state census". The act is, therefore, general in its nature and is applicable to counties reasonably classified on a population basis.
On the contention that the act under attack illegally delegates the legislative prerogative we find this statute governed by the rule announced in Sparkman v. County Budget Commission, 103 Fla. 242, 137 So. 809, 812, wherein it was stated:
"`The Legislature may feel itself unable conveniently to determine exactly when its exercise of the legislative power should become effective, because dependent on future conditions, and it may leave the determination of such time to the decision of executive or other officials. A statute so providing is not unconstitutional as a delegation of legislative power.' Ex parte Lewis, [101 Fla. 624] 135 So. 147, 149."
The same rule was clearly announced by this Court in Shad v. De Witt, 158 Fla. 27, 27 So.2d 517, 519, wherein it was stated:
"It is charged by appellant that the act is invalid because in it an attempt was made to delegate legislative and judicial functions and powers to the Civil Service Board and its secretary, contrary to the inhibitions of Article II. The act is not found to be so infected *518 when it is measured by the rule announced by this court in Arnold v. State ex rel. Culbreath, 140 Fla. 610, 190 So. 543, and reiterated in Hutchins v. Mayo, 143 Fla. 707, 197 So. 495, 133 A.L.R. 394. If the legislature defines a pattern to which rules and regulations must conform, then the provisions empowering the adoption of those rules and regulations to effectuate the general purpose of the act cannot be said to amount to an unlawful delegation of power. * * *" (Emphasis ours.)
To the same effect see State ex rel. Young v. Duval County, 76 Fla. 180, 79 So. 692; Zackary v. Morris, 78 Fla. 316, 82 So. 830; Florida Power Corp. v. Pinellas Utility Board, Fla., 1949, 40 So.2d 350.
We therefore hold that a legislative enactment of the nature of the one under attack does not contravene the prohibitions against delegation of the legislative function because it delineates the standards and clearly defines the orbit within which the empowered board shall function in promulgating the regulations.
The act in question has actually been recognized and enforced by this Court on numerous occasions although there has never previously been presented a frontal attack on its constitutionality. However, in Merritt v. Peters, Fla., 1953, 65 So.2d 861, in an opinion by Mr. Justice Thomas this Court recognized the applicability of the act in question and held that a certain regulation adopted by the Board of County Commissioners of Dade County limiting the size of commercial signs in certain zones constituted a valid exercise of the police power to promote the general welfare. The same statute was recognized and applied in Troup v. Bird, Fla., 1951, 53 So.2d 717; Peters v. Thompson, Fla., 1953, 68 So.2d 581; and other cases.
Finally, the appellant contends that the act in question does not authorize the adoption of the so-called set-back regulations and further that these regulations are arbitrary and unreasonable as applied to the property involved for the reason that they make it impossible for the plaintiffs to build their hospital. It appears to us to be implicit in the act itself that reasonable set-back requirements can be adopted. Section 1 of Chapter 17833, supra, empowers the Board of County Commissioners in the counties affected insofar as property outside of municipalities is concerned "to regulate and restrict the height, number of stories and size of buildings and other structures on land and water, the percentage of lot that may be occupied, the size of yards, courts and other spaces * * *."
When the county commissioners within the limitations of the act are authorized to regulate the percentage of a lot that may be occupied and the size of the yards adjacent to the buildings, there is no substantial difference in stating the regulation in the form of a so-called set-back line. This point was clearly covered in the decision of the Supreme Court of the United States in the landmark case of Gorieb v. Fox, 274 U.S. 603, 47 S.Ct. 675, 677, 71 L.Ed. 1228, 53 A.L.R. 1210, wherein it was held:
"It is hard to see any controlling difference between regulations which require the lot owner to leave open areas at the sides and rear of his house and limit the extent of his use of the space above his lot and a regulation which requires him to set his building a reasonable distance back from the street. Each interferes in the same way, if not to the same extent, with the owner's general right of dominion over his property. All rest for their justification upon the same reasons which have arisen in recent times as a result of the great increase and concentration of population in urban communities and the vast changes in the extent and complexity of the problems of modern city life."
The case last cited was followed by the Supreme Court of Florida in City of Miami v. Romer, Fla., 1952, 58 So.2d 849, 852, which involved a set-back provision of the Zoning Ordinance of the City of Miami to the effect that no buildings should be erected on any street in the City closer than *519 25 feet to the centerline of the street. In that case we held that even though the city officials might have in mind an eventual widening of the right-of-way on a particular street abutting appellee's property, such intention did not in and of itself constitute a "taking" of the property for public use within the meaning of Section 12 of the Declaration of Rights of the Florida Constitution, F.S.A.
We find nothing in the record that leads us to the conclusion that the open-space and set-back requirements are unreasonable as applied to the appellants' property, save and except as to the method employed by the appellee in applying the set-back requirement which controls the use of the South side of appellants' property abutting on NW 106th Street. In this particular aspect of the problem it is contended that the zoning officials of the county have construed the South line of appellants' property as the centerline of the street, or more correctly, the centerline of a proposed street to be improved at some indefinite date in the future. Defendant's witness, Czebrinski, testified, "I mean this property actually sits out 30 feet into 106th Street".
The record does show that appellants' property on the South projects into an area that might sometime be 106th Street but there is no dedicated public way and it seems clear from the record that the county has in effect "singled out" this particular parcel for an unusual application of its requirement that there be a set-back of 25 feet from the property line abutting a public way. The effect of this peculiar application of the regulation in this instance is that these appellants are actually being required to set-back some 40 feet from their South property line instead of 25 feet as is required by the wording of the regulation itself.
In City of Miami v. Romer, supra, where we generally sustained set-back requirements, we added the following:
"This is not to say that a situation could not arise where the application of the ordinance to a particular piece of property would be an unreasonable exercise of the police power; * *."
We are of the view that when a set-back regulation is peculiarly applied to a particular parcel in a fashion different from the application thereof to other property similarly conditioned then such application might amount to an unlawful taking without compensation contrary to the letter of Section 12 of the Declaration of Rights of the Florida Constitution.
We further hold that such is the effect of the application of the set-back requirement with reference to the South side of appellants' property and to that extent the final decree must be reversed. The effect of this holding is that the 25-foot set-back on the South should be measured from the South line of the property of the appellants and not from some imaginary street boundary which is anticipated for future development. In all other respects the final decree is affirmed.
>DREW, C.J., and THOMAS and HOBSON, JJ., concur.